Ms. Fidman, Ms. Cendejas, and Mr. Armard for the plaintiff appellant. Ms. Fidman is the supervising attorney. Ms. Cendejas and Mr. Armard. I see you want to divide your time. We've separated the clock. Did you wish to reserve time for rebuttal? Yes, Your Honor. I wish to reserve two minutes of my time for rebuttal. Please watch the clock. Go ahead. Good morning, and may it please the Court. My name is Victoria Cendejas, and I'm a certified law student with the UCI Law Appellate Litigation Clinic on behalf of the appellant. I am prepared to address the Fourth Amendment claims in this case, and my co-counsel, Ryan Amard, is prepared to address the other issues. Appellant is a sexual assault victim who sought help from the Los Angeles Sheriff's Department. Instead of helping her, Detective Hara violated appellant's Fourth Amendment rights by instructing Los Angeles Sheriff's Department officials to make an unauthorized digital duplication of the entirety of appellant's cell phone, and now appellant is seeking the return or destruction of her data. I would like to address two points in this matter. First, in the Ninth Circuit, it is clearly established that unauthorized digital duplication of data is an unreasonable seizure. This is consistent with Supreme Court precedent establishing a Fourth Amendment possessory interest in intangible property such as information. What if a person consents to the copying of the data? Your Honor. She signed a form. Your Honor, it is disputed that she signed the entry and search waiver. The district court held that it was disputed that she signed the waiver, but even if she did sign the entry and search waiver that appellees assigned to, the entry and search waiver nowhere explains that an entire seizure of all the data on appellant's cell phone would be taken. There is nowhere indicating that a digital duplication of every single piece of data on that phone would be seized by Los Angeles Sheriff's Department. So how are they to determine what they should seize and what they shouldn't seize if they're trying to figure out what happened in this case? Are you saying they're supposed to parse out or figure out what they can, download them what they can? Your Honor, I have two responses to that question. First is during the initial interview with Detective Hara and appellant, appellant specified specific messages between her and her assailant on a specific messaging application, WeChat. Detective Hara took appellant's phone from her hand and saw the specific messages that appellant was referring to and said she would need to download those specific messages and she did not make any mention of download of any data outside of those specific messages. Second, it is the government's onus to prove the scope of consent and here where the consent was limited, the government was required to abide by the consent that was provided by appellant. Well, and so how is there indication that it was limited? My understanding is she not only filed the consent, but she also gave the passcode so they could get in. Yes. Doesn't that somehow indicate consent to go in and see whatever? No, Your Honor. So appellant did hand over her phone and password to Detective Hara to download the specific set of messages that she delineated in the initial interview. She did not allow Detective Hara to download any other piece of information outside of those specific messages. Did she note that on the consent? I mean, where are you getting that she didn't allow that? She said that in the initial interview with Detective Hara. Again, she disputes that any consent form was signed. She only signed a receipt per property. And she states in declarations on the record, in deposition testimony, and Detective Hara's own report states that the messages, the seizure of messages, was limited to the specific download of the messages between assailant and appellant. But she's abandoned the forgery argument, right? I mean, we have in the record the entry and search waiver form that's signed apparently by her, and I think you've abandoned the forgery arguments. Shouldn't we assume that she consented to, you know, language that's pretty broad, full and unconditional authority to search for any and all data? Your Honor, there is no forgery claim on appeal, but the district court held that it was disputed whether appellant signed the form or not. I just, you know, if there's no forgery claim and you have a document there that has a signature apparently signifying her name, I'm not sure what other conclusion we can come to other than that she signed the consent form. Your Honor, that goes to the weight of the evidence, and any competency argument about the evidence that's on the record should go to the jury. If you dispute it, it would be one thing, but I think you've abandoned that. So, I mean, I just don't see how we can't look at that consent form and say she consented. Your Honor, the argument that we have abandoned on appeal is the forgery argument, but we have not abandoned the argument that it is disputed that she signed the form, and the district court held that it is disputed that she signed the entry and search waiver. But, again, even if she did sign the entry and search waiver, it only specifies a search and seizure for the data related to the case. Not every single piece of information on her cell phone outside of the scope of the case, including photos, messages, calendars, e-mails, every single thing that's on a personal private cell phone is in the hands of the government and was done so on an unauthorized digital duplication, which is a seizure with data. How would the officer know that she was not allowed to have the data on the phone copied given our case law in CDT, which has numerous statements about how the government needs to scoop up all this evidence, and then they can segregate it and determine what they need, what's relevant, and return what they don't need. Here, that would seem to suggest to Officer Hara that they can make a copy of the data on the phone. Your Honor, in comprehensive drug testing, the Ninth Circuit recognized that digital duplication of data constituted a seizure. There, there's a digital duplication of data outside of the scope of a warrant. Here, there's a digital duplication of data outside of the scope of consent. And while appellees assert that that's a distinction, that is very immaterial. And, in fact, United States v. Bramble held that the scope of consent limits the scope of a permissible search and seizure in the same manner as the specifications in a warrant. So comprehensive drug testing is the controlling case in this circuit, and it does state that a digital duplication of data constitutes a seizure. But in the CDT case, I mean, it was different because I think the government had a warrant to review the PED records of 10 players, but they scooped up, you know, hundreds of basically all the major league players and looked through them. So I think it's a bit different. Clearly no consent, no authorization to look through hundreds of other players other than those 10 identified by the government and given permission. So I think it seems, you know, definitely for the clearly established prong, it seems factually different. Your Honor, here there is a clear specification of consent to search for two specific messages in the Weave chat application. This is similar to comprehensive drug testing as, like you said, there they were only permitted to get data for 10 players and ended up seizing data for many more, like hundreds of players, and even more outside of that. So your argument hinges on the scope of consent. The scope of consent, Your Honor, and all of the data in that cell phone, which was personal and private. And Riley v. California states that there are heightened interests in cell phone data. Did you wish to reserve the remainder of your time? Yes, Your Honor. Thank you. Thank you. Mr. Amard? Amard. Amard. I knew I was going to get there at some point. All right. Please go ahead. Good morning, Your Honors, and may it please the Court. My name is Ryan Amard, and I am prepared to address the remainder of appellants' claims on appeal. I will primarily be addressing the dismissal of appellants' equal protection claim and the denial of leave to amend, but am prepared to answer questions on any of the remaining issues. Appellants' equal protection claim is simple and straightforward. She, as a sexual assault victim, was intentionally treated differently than victims of other crimes with no rational basis for the mistreatment. This is not a class of one claim, nor is this a failure to prosecute claim. There are three points I would like to make with respect to this claim. First, appellant has sufficiently alleged that appellee officers intentionally treated her differently based on archaic notions about sexual assault. Second, because of appellee officers' biases against sexual assault victims, the investigation of her complaint was discriminatory and inadequate in and of itself and caused appellant significant emotional harm. Third, there is no rational basis for the discrimination where the record suggests that appellee officers' discriminatory statements and actions were based on invidious stereotypes and animus about sexual assault victims. Beginning with the first point, appellant has pled numerous highly specific factual allegations indicating intentional discrimination against sexual assault victims. Prior to any meaningful investigation, Detective Harrod told appellant that she likely consented to sex and just didn't remember despite being unconscious from alcohol, asked if appellant had ever been in a situation where she had gotten drunk with friends and couldn't remember what happened the next day, and accused appellant of only coming forward after finding out that her assailant had been cheating on her. Additionally, Lieutenant Ruiz questioned appellant for not coming forward sooner and for not immediately knowing that she had been raped. Each of these statements indicates a fundamental misunderstanding about sexual assault and consent. Specifically, these statements were based on legally inaccurate assumptions about consent while unconscious from alcohol, were based on stereotypes about victims crying rape, and repeat patterns of scrutinizing victim behavior and victim blaming. But aren't sex crimes different from other crimes in that typically the defense from the defendant is consent? So therefore, law enforcement will ask questions about consent to test the strength of the case, as opposed to very few people will say the defense for assaulting someone is consent. So perhaps some of these officers ask in a very insensitive way, but isn't it different, sex crimes are different by its nature, and therefore they were asking questions about consent. Yes, Your Honor. So while asking questions about consent is a legitimate reason for investigative purposes, here the record indicates that from the moment appellant walked in, appellee officers were dismissive of her remarks and essentially believed that she was a liar from the get-go. And here, there's a difference between asking appellant if she consented and telling appellant that she probably consented despite being blacked out from alcohol supplied by her assailant. Like in Navarro, where this court found that there is a genuine dispute of material fact as to whether police officers fail to take a domestic violence victim's case seriously, here the record indicates that appellee officers fail to take appellant, a sexual assault victim's case, seriously. Moving on to my second point, because of appellee officers' biases against sexual assault victims, the investigation of appellant's complaint was discriminatory and inadequate in and of itself. This court has held that there is a constitutional right to non-discriminatory access to police services and that the discriminatory denial of these services may violate equal protection. In Elliott Park, this court held that the plaintiff sufficiently stated an equal protection claim against police officers who fail to investigate or arrest a drunk driver due to racial animus against the plaintiff. Like in Elliott Park, here appellee officers' biases led to premature conclusions about appellant's complaint without further investigation, which culminated in an inaccurate report submitted by Detective Hara to the LADA prosecutors and plausibly relied on by those prosecutors and declined to take on appellant's case. Additionally, appellant experienced significant emotional harm as a result of appellee officers' discrimination, including depression and anxiety, sleep disorder, and suicidal thoughts. Thus, it is clear from the record that appellant was discriminatorily denied access to police services and was harmed in the process. Lastly, appellant has sufficiently alleged that the discrimination was not rationally related to a legitimate government purpose. Because this is discrimination against sexual assault victims, the classification violates equal protection unless there is a rational relationship between the disparity of treatment and a legitimate government purpose. Here, appellee officers' discrimination was motivated solely by impermissible assumptions, invidious stereotypes, and animus towards sexual assault victims, each of which are impermissible motives under City of Claiborne, the Claiborne Living Center, and Romer v. Evans. Additionally, appellees continue to insist that they properly investigated her complaint in simply recording her statement and preparing a report and sending it to the prosecutors and defend themselves by claiming that because the LADA prosecutors declined to prosecute for their own reasons, appellee officers cannot be liable. However, this is not about the justifications of the LADA prosecutors, but rather this is about appellee officers' discrimination and whether they had a rational relationship for making these discriminatory and dismissive remarks. And here, appellee officers have not proffered a single justification for their discriminatory statements. Mr. Emerd, what information do you have that these officers treated her any differently than they treated other sexual victims of assault? Here, appellant is claiming that she, as a sexual assault victim, was treated differently than victims of other crimes, not victims of other sexual assaults. Okay. So as a group, they treated every sexual assault victim this way? Or just that she was treated differently? I mean, as Judge Lee just mentioned, this is a different kind of crime. So it's your position that it's totally because she was treated differently than she would have been treated if it had been some other kind of crime? Yes, Your Honor. All right. I see that my time is up. I respectfully request that this court reverse on the district court's rulings and remand for further proceeding.  Mr. Moore. Good morning. Dave Moore on behalf of Appellee's County of Los Angeles, Liliana Jara, and Richard Ruiz. The district court properly granted summary judgment on the Fourth Amendment claim to Jara and Ruiz.  and there was no evidence of sexual assault. We've gone over all of that in our brief. Your Honors have mentioned it in some of your questions to the appellant. The big piece of evidence, obviously, is the signed consent form. There is no forgery claim. All of our objections to the allegations of forgery were sustained by the district court, and that ruling has not been challenged. So you've got the form. You've got the fact that Jara was willingly provided the phone, physical custody of the phone. She was allowed to look through messages on the phone by the appellant, again, willingly with no objection. The appellant provided her passcode to the phone, wrote it down on a notebook. So you've got all this evidence that would have allowed the district court to, I think, very easily grant summary judgment on the consent issue, but the district court chose a different path, understandably, and granted the motion for summary judgment on the basis of qualified immunity. And that was a very solid basis as well. And the cases that the appellant cites. If I can interrupt here. Sure. I think the evidence is pretty clear about consent for the search, but Fourth Amendment includes search and seizure. So in terms of copying the materials, which O.L. is arguing is a seizure, is there any Ninth Circuit case that explicitly says that would not be a seizure, copying electronic data? U.S. v. Gorshkov. It's not a Ninth Circuit case, but it's from the Ninth Circuit, Western District of Washington. That's the case of all the cases that I've seen out of the Ninth Circuit. That's the case that most closely approximates this case in terms of facts. You've got a copy being made of a computer in that case, and the district court ruled that that did not constitute a seizure under the Fourth Amendment. The CDT case certainly, certainly did not hold that making a copy of electronically stored information in and of itself is a seizure. It is just plain wrong that the appellant argues that this precedent has somehow been settled in the Ninth Circuit. There is no Ninth Circuit case supporting the proposition that they're pushing. The U.S. v. Jefferson case, which is out of the Eastern District of Virginia, that doesn't really support the appellant because in terms of the qualified immunity issue, the judge in that case specifically noted that the Supreme Court hasn't weighed in on the issue of whether making a copy of information interferes with a possessory property interest so as to constitute a seizure. So even the judge in that case held, or indicated, that the Supreme Court hasn't weighed in on the issue. It was not clearly established at the time of the conduct in question that making a copy of this phone, given all the indicia of consent, it was not clear that that would constitute a seizure under the Fourth Amendment. The law was nowhere close to being clearly established for purposes of applying qualified immunity. And there's no way that the appellant can get around that. The cases say what they say. And the commentators that have discussed this issue, to a person, they all say in their articles, this is an open question. This is an outstanding question. The Supreme Court hasn't weighed on it. So the grant of summary judgment on the basis of qualified immunity was absolutely appropriate. One other notation about consent. There is no evidence in the record that the appellant ever directly told Detective Hara, do not copy anything beyond these WeChat messages. Their argument seems to be limitation of consent by omission. When she was asked in her deposition, well, what evidence do you have that Detective Hara should have known that she couldn't copy anything but these messages? She said, well, I didn't show her the other things. Well, that doesn't necessarily mean when you give your phone, after signing a written consent form, knowing that they're going to keep it for an extended period of time to do what they need to do. That doesn't mean that you haven't consented to a copy of the entire content of the phone. And I would submit that that's very telling evidence that there's a limitation by omission argument that's being pushed by the appellant that doesn't have any support in the case law. With respect to the equal protection claim, the appellant's own pleadings belie her contention that she's making a garden variety equal protection claim. She's making a class of one claim. And I would cite the Court to paragraphs 161 and 162 of the Second Amended Complaint. It's pretty clear from those allegations that she's asserting a class of one equal protection claim. The problem is there's never been a Ninth Circuit case that allowed a class of one equal protection claim on the basis of police inaction or police failure to investigate. And I would cite the Mancini and the Le Fay cases that were cited in our brief in support of that proposition. In any event, there was a rational reason why this investigation was handled the way it was. And as Your Honor noted, alleged sexual assault is a horse of a different color, so to speak, in comparison to other crimes. Consent is often an issue. So law enforcement officials have to ask the tough questions. Well, it kind of looks here like you were maybe having some sexual banter with the alleged assailant after the incident. What about that? It looks like maybe you were communicating with him after the incident. It looks like you were maybe going to meet with him again after the alleged incident. It looks like in some of these messages, you're seeking retribution against him because you think he's cheating on you, and you're going to post things online and potentially affect his job. This was all evidence that the investigating officers discovered and found when they looked at these messages. So they've got to ask these tough questions that get to the issue of consent. Now, the appellant may not like that, but that's something that the officers have to do, and it doesn't indicate an intent to discriminate on the basis of any protected classification. So you've got a situation where this isn't a protected class. The Ninth Circuit has never held that alleged victims of sexual assaults are in fact a protected class for purposes of equal protection. And in any event, you don't have allegations of specific facts showing any sort of discriminatory intent on the part of the law enforcement officials. So this claim was properly dismissed at the pleading stage. There's no Monell liability because there's no constitutional violations. That one's pretty easy. I don't think it's unless the panel has any questions for me on that issue, I will move on. And then the district court properly denied leave to amend. This is not your typical pro se litigant. This is not your typical pro se litigant. This is a very savvy individual who has filed by our count more than 30 different lawsuits, petitions for writs, and appeals, all of which have very similar allegations. So she'd already been given two shots at the apple. This was her Second Amendment complaint. She was asked during the hearing by the magistrate, can you express any other facts that you would be able to allege in support of your claims? She couldn't come up with anything. There was no abuse of discretion in denying leave to amend. And finally, there was no abuse of discretion in declining her request to redact information that she submitted to the court and that does not directly identify her by name. Unless you have any questions for me, I will go ahead and submit on the argument and the papers, and I would respectfully request that this court affirm the judgment that has been entered in favor of the appellees. Thank you. Thank you. Ms. Dejas. Thank you, Your Honors. I'd like to address three points that appellees bring up on appeal. And the first is that Supreme Court doctrine has actually long established that replicating intangible property such as information constitutes a seizure. In the United States, the New York Telephone Company, the court held that electronic recording of telephone numbers by use of pen registers was a seizure. In Cassidy, United States, the court described the electronic recording of conversations conducted in a telephone booth as a search and seizure. In Berger v. New York, the court referred to recorded conversations as a search and seizure. In Hoffa v. United States, the court held that Fourth Amendment protections are not limited to tangibles and extend to oral statements. In Riley v. California, the Supreme Court held that cell phone data requires a heightened privacy protections by the Fourth Amendment. Here, cell phone data is one of the utmost personal forms of information that you can get. In Riley v. California, the Supreme Court noted that your cell phone contains much more information than paper files, than photos, than telephone numbers. It contains every single piece of personal information that you want to put on your cell phone in there. And the county has all of Appellant's personal private data from her cell phone and sees that data without her consent. Second, I'd like to move on to- Can I ask a question? Are there any of the cases that you cited where those were cases, that found seizures where there was a signed consent instead of a warrant or a government action? No, Your Honor, but as I mentioned in my argument, United States v. Bramble states that scope of consent limits specifications in a warrant- I mean, limits a search and seizure as the same way as the scope of the warrant. And I'd like to move on to Gorshkov really quickly, which is an unpublished district court case, which was also decided prior to comprehensive drug testing. And there, the facts are also highly distinguishable. The FBI was investigating a Russian hacker in that case. Here, Appellant is a rape victim who sought Appellee's help after she was assaulted. Gorshkov does not supersede comprehensive drug testing, nor the Supreme Court doctrine that I just listed. And I'd like to move on to the forgery question and clarify and repeat that Appellant did not abandon on appeal that she did not sign the waiver. There may not be facts in the record regarding who put her signature on the waiver or what their state of mind was when they did so, but plaintiffs submitted a sworn declaration stating that she did not sign the waiver. The district court credited that for purposes of summary judgment, and this is in the record, excerpts of record on page 19. The court says that since it's not permitted to make credibility determinations on summary judgment, it accepts plaintiff's assertion that she did not sign the form made under penalty of perjury. So you're now fairly significantly over time. When the clock stops going down, it starts going back up. That means you've expended your time. Thank you. All right, thank you, counsel, for your arguments. We will take this case under submission, and we are in recess for today.
judges: BADE, LEE, Cardone